Filed 4/7/15  P. v. Stocks CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL JAMES STOCKS,<br><br>    Defendant and Appellant. | 2d Crim. No. B253473<br>(Super. Ct. No. 20102035440)<br>(Ventura County) |

Daniel James Stocks appeals a judgment following conviction of second degree commercial burglary, with findings that he suffered a prior serious felony strike conviction and served a prior prison term.  (Pen. Code, §§ 459, 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Shortly after midnight on July 2, 2012, Stocks and Matthew Merrion were skateboarding through the Buena High School campus.  When Merrion noticed that a cafeteria window was open slightly, he "hopped in," to "find something [to] take."  Merrion carried a flashlight, lighter, and gloves.  He telephoned Stocks, who was still outside, and asked him to come inside.

Merrion noticed construction materials inside the cafeteria but "there was nothing [he] could do with [them]."  Inside the teacher's lounge, he saw a soda vending

_____

[1] All statutory references are to the Penal Code unless stated otherwise.

machine. Friends had informed him that when the coin insertion area of a vending machine is set afire, coins fall from the machine. Merrion set the coin insert on fire, waited for coins to fall, and gathered them into a bag. While he awaited the coin drop, Merrion searched closets and drawers in the lounge.

Merrion walked through the cafeteria and saw Stocks standing near another vending machine from which smoke emanated. Merrion collected the coins dropping from the second machine, but then noticed flashlights outside the building. After warning Stocks, Merrion ran from the building.

Ventura police officers and a K9 officer were waiting for Merrion as he fled the cafeteria. Merrion carried gloves bearing burnt plastic on the fingertips and a screwdriver covered with burnt plastic. He informed the officers that Stocks was still inside the building.

The officers entered the cafeteria which contained a "heavy fog" and "toxic smell" of burning plastic. The officers found Stocks hiding behind a trash container in a janitor's closet. A flashlight and gloves were inside the trash container. Stocks carried a ring of janitor's keys and two lighters in his pocket. When interviewed by a police officer, Stocks stated that he saw Merrion set fire to the coin insert of the vending machine in the teacher's lounge.

Merrion pleaded guilty to burglary and arson. He testified at trial but did not receive leniency for his testimony. Merrion stated that he did not burn the second vending machine.

Stocks testified that he waited outside when Merrion entered the school cafeteria. Eventually, he entered the cafeteria to find Merrion so that they could return home. He denied setting any of the vending machines on fire and stated that he hid in the janitorial closet because he was afraid. Stocks stated that he placed the janitorial keys in his pocket to facilitate his escape.

The parties stipulated that Stocks suffered a felony robbery conviction on February 8, 2007. The trial court instructed that the prior conviction was relevant only to

Stocks's intent or motive in entering the school cafeteria. The court later instructed with CALCRIM Nos. 303 ("Limited Purpose Evidence in General") and 375 ("Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, etc.").

The jury convicted Stocks of second degree commercial burglary, but could not agree upon a second charged count of arson of another's property. (§§ 459, 451, subd. (d).) In a separate proceeding, Stocks admitted suffering a prior serious felony strike conviction and serving a prior prison term. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) The trial court sentenced Stocks to a five-year prison term, consisting of a doubled two-year term for the commercial burglary count, plus one year for the prior prison term. The court also imposed a $280 restitution fine, a $280 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and awarded Stocks 541 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Stocks appeals and contends that: 1) the trial court erred by permitting evidence of his 2007 robbery conviction; 2) the prosecutor committed misconduct during summation; and 3) the trial court erred by accepting his admission of the prior felony conviction and prison term allegation without advising him of his constitutional rights and accepting a waiver thereof.

*DISCUSSION*

I.

Stocks argues that the trial court erred by permitting evidence of his 2007 robbery conviction (theft of money and marijuana from a victim after striking him) as bearing upon his intent or motive in committing the school burglary. (Evid. Code, § 1101.)[2] He claims that the evidence was inadmissible pursuant to section 1101; it was unduly prejudicial pursuant to section 352; and admission of the evidence violated his constitutional rights.

---

[2] All further statutory references in Part I. are to the Evidence Code.

Section 1101, subdivision (a) prohibits the admission of character evidence if offered to prove conduct in conformity with that character trait, sometimes described as propensity evidence. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405-406.) Section 1101, subdivision (b) permits evidence of a prior or uncharged act, however, when relevant to prove some other disputed fact. (*Id.* at p. 406.) "If an uncharged act is relevant to prove some fact other than propensity, the evidence is admissible, subject to a limiting instruction upon request." (*Ibid.*)

Even if uncharged acts evidence is otherwise admissible, a defendant may assert that section 352 precludes the evidence. (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th 335, 406.) Pursuant to section 352, a trial court may exclude otherwise relevant evidence if its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. (*People v. Edwards* (2013) 57 Cal.4th 658, 713.) Evidence is substantially more prejudicial than probative if it presents an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*Ibid.*) We test the court's ruling pursuant to section 352 for an abuse of discretion; that is, whether the court exercised its discretion in an arbitrary or unreasonable manner. (*People v. Suff* (2014) 58 Cal.4th 1013, 1066.)

The trial court did not err by permitting evidence of the 2007 felony robbery conviction pursuant to sections 1101, subdivision (b) and 352. The prior robbery conviction was relevant to establish Stocks's intent and motive in being at the high school after midnight. Stocks testified that he was simply present with a friend and that he waited outside until Merrion urged him to come inside. Stocks pleaded not guilty to the present charges and thus all elements of the crimes, including his intent, were in issue. (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th 335, 407.) There is no abuse of discretion because the evidence was relevant to establish facts other than Stocks's propensity to commit theft. (*Id.* at p. 409 [standard of review].) Although the prior crime and the present crime involve dissimilar factual circumstances, they each involve the theft of money. (*People v. Jones* (2012) 54 Cal.4th 1, 50 [to establish intent, the prior

4

conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance].)

The trial court also did not abuse its discretion pursuant to section 352. (*People v. Suff*, *supra*, 58 Cal.4th 1013, 1066 ["'A trial court's exercise of discretion under section 352 will be upheld on appeal unless the court abused its discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner'"].) Evidence of the prior robbery was presented by a stipulation between the parties. The stipulation was brief, provided no factual details of the circumstances of the prior robbery, and did not present "a substantial risk of undue prejudice." (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th 335, 407 [statement of general rule].) The court also instructed with limiting instructions regarding the jury's use of the prior robbery conviction. (CALCRIM Nos. 303, 375.) It also instructed at the time of the stipulation that the jury may not conclude that if Stocks "did something in the past, therefore, he's guilty this time," and that the stipulated evidence was relevant to Stocks's intent and motivation. There is no error.

## II.

Stocks contends that the prosecutor committed misconduct during summation by urging the jurors, as taxpayers, to be offended by his crime, and by comparing him to "Bernie Madoff" and "Enron." He asserts that it is prosecutorial misconduct to compare a defendant to a notorious criminal or to urge jurors to convict to preserve community values. (*People v. Fields* (1983) 35 Cal.3d 329, 362-363 [prosecutor may not appeal to sympathy or passions of jury].)

During summation, the prosecutor stated: "Look what happened with Enron and Bernie Madoff, all these big execs that take from others and don't want to take responsibility for it. Just like those individuals, the defendant found a clever way to take what was not his. . . . Another thing that should really offend you about this case as a taxpayer, where did they decide to steal from? . . . They went to a school. Those are your tax dollars at work. . . . It is offensive because your tax dollars have to go to

5

cleaning up what this defendant did . . . . Dollars are tight in public education. So it is offensive, not only what the defendant was doing, but his chosen place for this criminal activity. He doesn't care; you should. . . . [D]efendant also . . . sucked up the time of more than five officers . . . . So now we've got a situation where you are paying because this defendant does not want to come out and take responsibility."

The standards governing review of claims of prosecutorial misconduct are well settled. (*People v. Adams* (2014) 60 Cal.4th 541, 568.) When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the misconduct violates the federal Constitution. (*Ibid.*) Prosecutorial misconduct that falls sort of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the court or jury. (*Ibid.*)

To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood that the jury understood or applied the complained-of-comments in an improper or erroneous manner. (*People v. Centeno* (2014) 60 Cal.4th 659, 667; *People v. Caldwell* (2013) 212 Cal.App.4th 1262, 1269.) A prosecutor possesses wide latitude, however, to vigorously argue his case and to make fair comment upon the evidence. (*Caldwell*, at p. 1269.) In our assessment of prosecutorial misconduct, we do not lightly infer that the jury drew the most damaging rather than the least damaging inferences from the prosecutor's statements. (*Centeno*, at p. 667.)

To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objections and request a jury admonition to disregard the improper argument. (*People v. Adams*, *supra*, 60 Cal.4th 541, 568-569.) The failure to object and request an admonition is excused if doing either would have been futile or if the admonition would not have cured the harm. (*Id.* at p. 569.) We generally presume, however, that jurors will heed an admonition to disregard questions or arguments to

which the trial court has sustained an objection. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 172.)

For several reasons, we reject Stocks's contention of prosecutorial misconduct.

First, Stocks failed to object and request a jury admonition regarding the prosecutor's comments. An objection would not have been futile and an admonition would have cured any harm. Stocks has forfeited this argument on appeal. (*People v. Centeno*, *supra*, 60 Cal.4th 659, 674 [a prosecutor's misstatements are generally curable by admonition].)

Second, the prosecutor's brief comparison of Stocks's theft of coins from a soda machine to multi-million dollar white collar crime was hyperbole and an obvious exaggeration. Also, the references to taxpayers as victims of a school theft did not highlight any common-sense inferences that the jurors themselves could not have drawn from the evidence. Considered together, there is no reasonable likelihood that the jury understood or applied the comments in an erroneous manner. (*People v. Adams*, *supra*, 60 Cal.4th 541, 568 [statement of general rule].)

Any arguable misconduct aside, the prosecutor reminded the jury to "look at the evidence and look at the law" and to "weed through the statements made by [counsel]." The trial court also instructed with CALCRIM No. 222 ("Evidence"), that statements of counsel are not evidence. We presume that jurors understand and follow the court's instructions. (*People v. Adams*, *supra*, 60 Cal.4th 541, 578.) There is no prejudice pursuant to the application of any standard of review.

### III.

Stocks asserts that the trial court erred by accepting his admissions of the prior serious felony strike conviction and prison term allegation without advising him of his constitutional rights and accepting a waiver thereof. He argues that the error is reversible because the record is "[t]ruly silent" regarding advisements and waiver. (*People v. Mosby* (2004) 33 Cal.4th 353, 361.)

7

Prior to trial and as a scheduling matter, the prosecutor reminded the court that Stocks was entitled to a jury trial regarding the prior serious felony strike conviction and prison term allegation. Stocks's attorney responded that she would consult with Stocks whether he would admit the prior conviction and prison term allegation or demand a jury trial. Later, during trial, the court read a stipulation between the parties establishing that Stocks was convicted of felony robbery on February 8, 2007 (the serious felony strike conviction).

Following the jury verdict, Stocks's attorney stated that Stocks would admit the prior serious felony strike conviction and the prison term allegation. In response to the prosecutor's questions, Stocks then admitted that the 2007 robbery conviction was a strike conviction and a prison term prior within the meaning of sections 667, subdivision (c), and 667.5, subdivision (b). No admonishments were given nor were any waivers received.

A defendant has a statutory right to a jury trial regarding prior convictions. (*People v. Mosby*, *supra*, 33 Cal.4th 353, 360.) "Ideally, a defendant admits a prior conviction only after receiving, and expressly waiving, standard advisements of the right to a trial, to remain silent, and to confront adverse witnesses." (*Id.* at p. 365, fn. 3.) The absence of express admonitions and waivers, however, does not require reversal regardless of prejudice. (*Id.* at p. 361.) If the transcript of the proceeding does not reveal complete advisements and waivers, the reviewing court must examine the entire record to determine whether the defendant's admission of the prior conviction was intelligent and voluntary in light of "the totality of circumstances." (*Ibid.*)

Considering the totality of the circumstances, Stocks's admissions were intelligent and voluntary. Prior to trial, the prosecutor stated that Stocks had a right to a jury trial regarding the prior conviction and prison term allegation. During trial, albeit for purposes of defense strategy, Stocks stipulated that he was convicted of robbery on February 8, 2007. During trial, Stocks testified and also confronted witnesses against him. Moreover, Stocks has a lengthy juvenile and adult criminal record, including many

8

theft-related crimes, resulting from guilty pleas.  (*People v. Mosby*, *supra*, 33 Cal.4th 353, 365 [defendant's previous experience with the criminal justice system is relevant to his knowledge and sophistication regarding his legal rights].)  Although the better practice would have been to give full advisements and obtain express waivers, reversal is not required under the circumstances here.  (*Id*. at p. 365, fn. 3.)

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

9

Kent M. Kellegrew, Judge

Superior Court County of Ventura
_____

Laurie A. Thrower, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Steven E. Mercer, Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.